UNITED STATES of America

v.

John N. MITCHELL et al.,
Defendants.

Crim. No. 74–110.

United States District Court,
District of Columbia.

Dec. 5, 1974.

James F. Neal, Associate Sp. Prosecutor, Peter M. Kreindler, Counsel to the Sp. Prosecutor, Richard Ben-Veniste, Jill Wine Volner, George T. Frampton, Jr., David Kaye, Richard Weinberg, Asst. Sp. Prosecutors, Watergate Special Prosecution Force, Washington, D. C., for the United States.

William G. Hundley, Plato Cacheris, Washington, D. C., for defendant John N. Mitchell.

John J. Wilson, Frank H. Strickler, Ross O'Donoghue, George A. Fisher, Washington, D. C., for defendant H. R, Haldeman.

William Snow Frates, Frates, Floyd, Pearson, Stewart, Proenza & Richman, Miami, Fla., for defendant John D. Ehrlichman.

David G. Bress, Thomas C. Green, Washington, D. C., for defendant Robert C. Mardian.

Jacob A. Stein, Washington, D. C., for defendant Kenneth Wells Parkinson.

Herbert J. Miller, Jr., William H. Jeffress, Jr., R. Stan Mortenson, Washington, D. C., for Richard M. Nixon.

## MEMORANDUM OPINION AND ORDER

SIRICA, District Judge.

This matter comes before the Court on the motions of defendants John Ehrlichman, Harry R. Haldeman and John N. Mitchell for leave to take the deposition of Richard M. Nixon, the replies thereto of defendants Robert C. Mardian and Kenneth Wells Parkinson, and of Richard M. Nixon, the memorandum in opposition submitted by the Special Prosecutor, and a motion to quash filed by Richard M. Nixon.

The background of the present controversy has been set forth in previous orders (see, e. g., order of November 13, 1974) and only the immediate setting for the dispute will be recited here.

On November 13, 1974, the Court appointed a panel of three eminent physicians to perform a thorough examination into the state of Mr. Nixon's health and report their findings to the Court. The examination was prompted by an outstanding subpoena for Mr. Nixon to appear as a witness and the pending motion to quash the subpoena due to Mr. Nixon's ill health. On November 29, 1974, the report of the medical panel was received by the Court and filed in the record of this case. It was the receipt of this report that prompted the filing of the instant motions and memoranda.

The three moving defendants are seeking to have the Court grant an order pursuant to Rule 15 of the Federal Rules of Criminal Procedure and Title 18, United States Code § 3503 [1] permitting them to take the deposition of Mr. Nixon commencing on January 6, 1975. Thus, the motions seek both a continuance and an order authorizing the taking of a deposition. For the reasons stated herein, these motions are denied.

The members of the medical panel appointed by the Court to appraise the state of Mr. Nixon's health reported as their unanimous opinion that he could not appear and testify before February 1975, and that he would not be well enough to give a deposition until at least January 6, 1975. This fact in and of itself should answer the defendants' motions. The witness is simply unavailable to be deposed. The Court will not issue an order to take the deposition of

[1]. Inasmuch as this statute incorporates the three essential requirements of Rule 15, this opinion shall focus on the language and requirements as set forth in the Rule. See United States v. Singleton, 460 F.2d 1148, 1154 (2d Cir. 1972), cert. denied 410 U.S. 984, 93 S.Ct. 1506, 36 L.Ed.2d 180 (1973); see also H.R.Rep.No.91–159, U.S.Code Cong. & Admin.News, pp. 4007, 4009, 4025 (1970).

Mr. Nixon while it appears that he is so ill that the taking of such a deposition could seriously jeopardize his health.

Nor will the Court issue an order granting leave to take such depositions on January 6, 1975. It appears to be the consensus of opinion of all the parties that this trial will be concluded well before January 6, 1975. That date is, of course, the estimated earliest possible date Mr. Nixon could be deposed. It is possible that complications in Mr. Nixon's recovery could occur, thus further postponing the opportunity for taking his deposition. Also, the witness would have to be allowed some time to review, with his attorney, his voluminous records so as to prepare to testify. And the very restricted schedule set down by the medical panel for actually taking the deposition would make the process a very lengthy one indeed. It would be unwarranted and wholly inappropriate to interrupt, adjourn or continue this trial, with the jury sequestered, until an uncertain date in the somewhat distant future. See generally Dearinger v. United States, 468 F.2d 1032, 1035 (9th Cir. 1972); Neufield v. United States, 73 U.S.App.D.C. 174, 118 F.2d 375, 380 (1941), cert. denied, 315 U.S. 798, 62 S.Ct. 580, 86 L.Ed. 1199 (1942). The cases cited by the defendants to the contrary are clearly distinguishable on the critical points from the case at hand.

It would be equally improper to release the jury from sequestration and continue the case on that basis. The vigorous objections raised by defendants Mardian and Parkinson reveal the fallacy of this suggestion. Moreover, the waivers of the right to object filed by the movants are very conditional and only highlight the problems that would arise.

Furthermore, the Court is not convinced that all of the requirements of Rule 15 or the commonly recognized requirements for continuance have been met. To justify taking such a deposition in a criminal case, the rule requires not only a showing that the witness is unavailable to appear at trial but also "that his testimony is material and that it is necessary to take his deposition in order to prevent a failure of justice . . . ." The Notes of the Advisory Committee on Rule 15 emphasize that the drafters of this Rule "contemplated that in criminal cases depositions would be used only in exceptional situations . . . ." Cf., Notes of the Advisory Committee on Proposed Amendments to Rule 15. While no one would deny that the present situation is unique in many respects, it apparently is not the kind of exceptional situation for which the extraordinary procedure of criminal-case deposition was designed.[2] See, e. g., United States v. Rosenstein, 303 F.Supp. 210, 212, 213 (S.D.N.Y.1969); United States v. Birrell, 276 F.Supp. 798, 822, 823 (S.D.N.Y.1967); United States v. Glessing, 11 F.R.D. 501, 502 (D.Minn. 1951). Nor has a satisfactory showing of the need for a continuance been made. See e. g., Dearinger v. United States, *supra*; United States v. Harris, 436 F.2d 775, 776 (9th Cir. 1970); Powell v. United States, 420 F.2d 799, 801 (9th Cir. 1969).

Although the movants vigorously press their claims that the testimony of the former President is indispensable to their defense, a review of the specific testimony which they desire to elicit

---

2. Under Rule 15, a court may authorize the deposition of a witness provided the court makes a finding that the deposition is necessary "to prevent a failure of justice." The same is true for written interrogatories. See Rule 15(a) and (d). Since the Court herein reaches a contrary conclusion, that Mr. Nixon's testimony is not essential in the sense contemplated by Rule 15, it would be inconsistent for the Court to require or permit a deposition by written interrogatories. Thus, there is no need for the medical panel to report on Mr. Nixon's ability to answer interrogatories, and the Court has so advised, the doctors. Having submitted their report of November 26, 1974, their assignment is completed.

from the witness reveals that, in large measure at least, the testimony they desire him to give could be, and in many instances has been elicited from other witnesses. For example, Mr. Ehrlichman claims that Mr. Nixon's testimony is needed "to establish that the matters discussed between Mr. Nixon and Mr. Haldeman on June 23rd were never told to Mr. Ehrlichman and, as a result, Mr. Ehrlichman sat in a meeting with the same knowledge as [CIA] Director Helms and Deputy Director Walters." (Ehrlichman Motion at 2–3.) But Mr. Haldeman has already taken the stand, and Mr. Ehrlichman's counsel will have the opportunity to cross-examine him about whether, to his knowledge, Mr. Ehrlichman was told about the Nixon-Haldeman conversation. Likewise, Mr. Walters has appeared as a witness and Mr. Ehrlichman's attorney has had the opportunity to cross-examine him as to Mr. Ehrlichman's participation in the crucial meeting. Certainly Mr. Nixon's cumulative testimony on this and similar points is not indispensable or necessary to prevent a failure of justice. See generally United States v. Reed, 155 U.S.App.D.C. 198, 476 F.2d 1145, 1147 n. 1 (1973). See also government's memorandum, pp. 6–11. Similar examples could be taken from Mr. Mitchell's and Mr. Haldeman's motions.

Not only are other witnesses available to testify about many of the points as to which Mr. Nixon's testimony is deemed necessary by the defendants, but the defendants themselves can testify about those specifics. Indeed, Mr. Mitchell and Mr. Haldeman have already taken the witness stand in their own defense, and counsel for Mr. Ehrlichman has stated that his client will do the same.

The value of Mr. Nixon's testimony to the defendants should not be unrealistically overestimated. Mr. Nixon himself has been named by the Grand Jury as an unindicted co-conspirator in this case. Thus, he has been accused, in effect, of being an accomplice of the defendants. Certainly (if he were called) his testimony would be subject to the instruction to the jury that it should be received with caution and scrutinized with care. See District of Columbia Bar Ass'n., Criminal Jury Instructions for the District of Columbia #2.22 (2d ed. 1972).

■ Finally, the importance of the facts about which the witness would be able to testify may have been exaggerated by the defendants. There has been no showing by way of a statement, affidavit, or otherwise from Mr. Nixon that he would, in fact, testify along the lines the defendants have predicted. See e. g., United States v. Trenary, 473 F.2d 680, 682 (9th Cir. 1973). Their motions list a number of ultimate facts and conclusions which they claim Mr. Nixon would testify about to exonerate them. But the predicted testimony that Mr. Ehrlichman was not part of a conspiracy, or that he never entertained the required corrupt intent, for example, would be inadmissible as conclusory opinion testimony in any event.

Therefore it is by the Court this 5th day of December, 1974,

Ordered that the motions for leave to take the deposition of Richard M. Nixon on January 6, 1975, filed by John Ehrlichman, Harry R. Haldeman, and John N. Mitchell be, and the same hereby are, denied; and it is further

Ordered that the motion of Richard M. Nixon to quash the September 4, 1974 subpoena to appear and testify be, and the same hereby is, granted.